JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HAYLEY SCHELLHAAS

**DEFENDANTS**
COMPASS GROUP, USA, INC.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mecklenburg
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen , Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. §2000e, et seq. ("Title VII"); 43 P.S. §951, et seq. ("PHRA"); Phila. Code § 9-1101, et seq. ("PFPO")
Brief description of cause:
Plaintiff brings this action against her former employer for sex and sexual orientation discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
March 8, 2023

SIGNATURE OF ATTORNEY OF RECORD
*[signature: Katherine C. Oeltjen]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Gilbertsville, PA 19525 _____

Address of Defendant: ___ 2400 Yorkmont Road, Charlotte, NC 28217 ___

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/08/23 _____  /s/ Katherine C. Oeltjen _____  318037 _____
　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ Katherine C. Oeltjen, Esquire ___, counsel of record *or* pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 03/08/23 _____  /s/ Katherine C. Oeltjen _____  318037 _____
　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Hayley Schellhaas | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| Compass Group USA, INC. | : | |
| Defendant | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                         ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                 ( X )

| | | |
|---|---|---|
| March 8, 2023 | *[signature]* | Plaintiff, Hayley Schellhaas |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2859 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HAYLEY SCHELLHAAS,**<br>**Gilbertsville, PA 19525** | **CIVIL ACTION NO.** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **COMPASS GROUP USA, INC.,**<br>**2400 Yorkmont Road**<br>**Charlotte, NC 28217** | |
| **Defendant.** | |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Hayley Schellhaas ("Plaintiff"), was a twenty-two-year, high performing Regional Sales Director for Defendant, Compass Group USA, Inc. ("Defendant"), when she was terminated within five weeks of complaining about discrimination and retaliation based on her sex and sexual orientation. Prior to her termination, Plaintiff had complained to Defendant on several occasions throughout her tenure—abiding by Defendant's policies requiring her to do the same—about years of rampant sex discrimination, sexual harassment, and retaliation. Plaintiff was met with increasing hostility, unjust and unwarranted criticism, and retaliatory action each time, including but not limited to reassigning her accounts to her non-complaining male and/or heterosexual counterparts, and eventually terminating her. Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO") against Defendant. Plaintiff seeks all appropriate relief.

1

## II.    PARTIES

1.    Plaintiff is an individual and citizen of Pennsylvania. She resides Gilbertsville, Pennsylvania.

2.    Plaintiff is female.

3.    Plaintiff is gay.

4.    Defendant is a North Carolina corporation with a principal place of business located at 2400 Yorkmont Road, Charlotte, North Carolina 28217.

5.    Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania, including, without limitation, within and throughout the City of Philadelphia.

6.    At all times material hereto, Defendant employed more than fifteen (15) individuals.

7.    At all times material hereto, Plaintiff worked for Defendant out of her home office in Pennsylvania with travel within the City of Philadelphia on behalf of Defendant on a bi-weekly to monthly basis.

8.    Plaintiff conducted business on Defendant's behalf within the City of Philadelphia and Defendant does business within the City of Philadelphia.

9.    At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

10.    At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

11.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

12.     Defendant is a covered employer within the meaning of the statutes that form the basis of this matter.

### III.    JURISDICTION AND VENUE

13.     The causes of action which form the basis of this matter arise under Title VII, the PHRA and the PFPO.

14.     The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. §1331.

15.     The District Court has supplemental jurisdiction over Count II (PHRA) and Count III (PFPO) pursuant to 28 U.S.C. §1367.

16.     The District Court has jurisdiction over all Counts (Count I-III) pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of North Carolina.

17.     Venue is proper in this District Court under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to these claims occurred within this District.

18.     On or about August 5, 2021, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") (No. 202100305), and cross filed with the Equal Employment Opportunity Commission ("EEOC") (No. 17F202161517), complaining of the acts of discrimination and retaliation alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Charge of Discrimination (with personal identifying information redacted).

19.    On or about December 14, 2022, the EEOC issued Plaintiff a Notice of Right to Sue. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

20.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

21.    On or about June 1, 1999, Plaintiff began working at a company that was later acquired by Defendant.

22.    Defendant is a national contract food service company.

23.    Plaintiff was a Regional Sales Director at Defendant from 2008 up until her 2021 termination.

24.    In her capacity as Sales Director, Plaintiff was responsible for growing Defendant's business and industry sector.

25.    Plaintiff worked out of her home office in Pottstown, Pennsylvania up until 2016, and Gilbertsville, Pennsylvania from 2016 onward.

26.    Plaintiff routinely performed work for Defendant's business interest within the City of Philadelphia.

27.    Plaintiff consistently performed her job duties in a highly competent manner and received positive feedback.

28.    By way of example and without limitation, Plaintiff won the Sales Excellence award for twelve consecutive years, from 2008 through 2019.

29.    Plaintiff began reporting to Jennifer Thompson ("Thompson"), Regional Vice President, Sales, in or about August 2018.

30.    Plaintiff was the only gay employee reporting to Thompson.

31.    Thompson reported to Michael Gaebel ("Gaebel"), Senior Vice President, Sales, Corporate Services.

32.    Gaebel reported to Christopher Kowalewski ("Kowalewski") Chief Growth Officer.

33.    Defendant has a long history of systemic, unmediated sex discrimination.

34.    By way of example and without limitation:

    a.    In or about 2009, a male colleague gave Plaintiff a Talbot's gift card and told her to buy "appropriate" attire for her role. Plaintiff understood this to mean that the colleague wanted her to dress in a more traditionally feminine manner.

    b.    When visiting client premises and professional kitchens—a standard part of Plaintiff's sales role—Plaintiff was told to "leave" on multiple occasions because professional kitchens were "a man's space."

    c.    From 2010-2013, Dean Poling ("Poling"), a Vice President on Plaintiff's sales team, made regular abusive and harassing comments to Plaintiff and other female colleagues. For example, Poling would tell women that they were not "good" at their jobs. Just before Plaintiff made a client presentation, Poling told Plaintiff that she was "going to screw up this deal for us" because she was "just not as good" as her male colleague. Plaintiff consistently outperformed that male colleague in sales.

    d.    Poling also made remarks to Plaintiff about her sex and sexual orientation, even before Plaintiff came out at work. For example, in 2012, Poling asked Plaintiff

whether one of their female dieticians would be her "type" if she were "a lesbian."

e.  Plaintiff and three other female colleagues who had experienced similar discriminatory comments and conduct based on their sex complained to Human Resources about the same. Rather than issuing any form of corrective action or terminating Poling, he was moved to another position at Defendant.

f.  In or about August or September 2013, at a work event at a hotel, on the night of his retirement party, Kurt Kimball ("Kimball") (male, heterosexual), then Chief Growth Officer, sexually harassed Plaintiff by way of the following and without limitation:

    i.  At the hotel bar, Kimball approached Plaintiff, brought her a drink, and instructed her to go up with him to his hotel suite.

    ii.  Plaintiff went with Kimball as instructed, as she felt pressured to comply because he was her superior.

    iii.  Alone in the elevator to his hotel suite, he put his hands on Plaintiff's arms and shoulders, and pulled her in toward him.

    iv.  After they entered his room, Plaintiff pulled away from him and told him that she needed to leave.

    v.  Plaintiff rushed out of his hotel room, went back down to hotel bar, found several of her colleagues, and began crying, telling them about the comments and conduct of a sexual nature that Kimball had subjected her to.

    vi.  Plaintiff's colleagues called Gaebel, who came down to speak with her.

6

    vii.   Plaintiff complained to Gaebel of Kimball's comments and conduct of a sexual nature toward her.

   viii.  Gaebel told her that he would report the same to Human Resources.

    ix.   After Plaintiff left his hotel room, Kimball called Plaintiff's cell phone over forty (40) times.

g.   Following the above incident, during a phone call with Adrienne Williams ("Williams") (female, heterosexual), Human Resources, Plaintiff complained of Kimball's comments and conduct of a sexual nature toward her.

h.   Defendant took no action to remedy or prevent the sex discrimination, including sexual harassment, to which Plaintiff was subjected.

i.   Defendant failed to investigate Plaintiff's sex discrimination complaints.

j.   Plaintiff heard that other female employees had complained of sexual harassment by Kimball and that Kimball retired because of female employees' sexual harassment complaints. Plaintiff also heard that multiple female employees have complained of sexual harassment by high-level male executives, including Tom Ondroff (male, heterosexual), Chief Financial Officer and Chief Growth Officer.

35.   Following Plaintiff's sex discrimination complaint in 2013, she was treated in a hostile and dismissive manner—differently and worse than how male and/or noncomplaining employees were treated, and differently and worse than how she was treated before she complained of sex discrimination.

36.   In or about 2014, Plaintiff came out at work as gay to several coworkers.

37.   After she came out as gay, Plaintiff was treated in a hostile and dismissive manner—differently and worse than how male and/or heterosexual employees were treated.

38.    Plaintiff was subjected to a hostile work environment based on her sex and sexual orientation from the time she came out at work up until her 2021 termination.

39.    By way of example and without limitation:

a.    In or about the fall of 2015, Plaintiff started bringing her girlfriend to work functions and with her on sales trips, when permitted to bring a partner.

b.    In or about the fall of 2015, at a work event, a male employee lifted two (2) fingers up to his mouth and stuck his tongue through his fingers, licking around his fingers, while staring at Plaintiff, which she understood to be a sexual gesture because of her sexual orientation.

c.    In or around 2016, while in the office, a different male employee (Tom _____, heterosexual) asked Plaintiff, "Who is the guy in your relationship?" Plaintiff responded that it was "none of [his] business." Tom did not stop asking Plaintiff questions, asking her "how" women could have sex if neither partner had "male parts," and other questions to that effect.

d.    In or around 2017, anytime Plaintiff wore a skirt and/or makeup to work, a male employee (Patrick ____, heterosexual) routinely commented on Plaintiff's attire, telling her that only "straight chicks" dressed that way.

e.    In or around November 2018, Plaintiff attended a Sales Excellence event with her partner. At the event, a sector CEO asked Plaintiff and her partner to have a "foursome" that night with him and his wife. Plaintiff walked away and avoided him for the rest of the evening.

f.    At a work event in 2019 in Chicago, male associates from another sector came up to Plaintiff at a tasting table and asked her if she wanted to "try the fish" because

they "heard [she was] a lesbian." Plaintiff responded that they were "disgusting" and walked away from them.

g. In or about November 2019, at a work event, Thompson commented that Plaintiff cleaned up really well for a "dyke."

h. In or about 2019, Plaintiff heard that, at a work event, in front of other employees, _____ (male, heterosexual), Sales Director, commented that he was going to "fuck" Anita Cox (female, homosexual), Regional Sales Director. The male employee remains employed with Defendant.

40.    In addition to the discriminatory comments, conduct, and ridicule to which Plaintiff was subjected on an ongoing basis, Plaintiff's responsibilities were unjustly taken away from her and assigned to her male and/or non-complaining and/or heterosexual counterparts.

41.    By way of example and without limitation:

a. When Plaintiff secured an account in or around 2014, Defendant gave the credit and commission to a male Sales Director employee, Tom Hennessey (male, heterosexual), Sales Director, instead of Plaintiff.

b. After Plaintiff built a relationship with another potential client in or around 2017, Defendant assigned the opportunity to Nicholas Gillett ("Gilett"), Sales Director (male, heterosexual), and Robert Nicklin, ("Nicklin"), Senior Vice President (male, heterosexual). Plaintiff was asked to turn over all of her work, findings, and all information she had gathered to Gillett and Nicklin, who were compensated and credited for the sale instead of Plaintiff.

c. Another account Plaintiff had worked on over the course of two years (2017-2018) was, without explanation, removed from her and assigned to David

Rodenheiser (male, heterosexual), Sales Director, for which he received the credit and compensation instead of Plaintiff.

    d. On April 14, 2020, Defendant removed another account from Plaintiff and assigned it to George Alahouzous ("Alahouzous") (male, heterosexual), Regional Sales Director, who received the credit and commissions for the account instead of Plaintiff. Plaintiff was more qualified to manage the account than the male, heterosexual, noncomplaining employee to whom it was assigned.

42. When Plaintiff complained to Jennifer Hayes ("Hayes") (female, heterosexual), Human Resources, that her accounts were being reassigned, Defendant began a further campaign of discrimination and retaliation, criticizing Plaintiff's performance—which had never been an issue before she complained. By way of example and without limitation:

    a. On April 15, 2020, in a meeting with Kowalewski, Plaintiff asked why an account was taken away from her and assigned to Alahouzous. He dismissed Plaintiff's questions and stated that he did not understand why they were having this conversation.

    b. On April 15, 2020, in an email to Gaebel, Plaintiff asked why an account was taken away from her and assigned to Alahouzous.

    c. On April 15, 2020, in an email to Hayes, Plaintiff stated that she was concerned that an account was taken away from her and assigned to Alahouzous. Plaintiff received no response to her email.

    d. On April 16, 2020, in an email from Gaebel, he stated that he would schedule a meeting for next week to discuss Plaintiff's concerns.

e.  On April 20, 2020, in a meeting with Gaebel and Thompson, rather than discussing Plaintiff's concerns, Plaintiff was issued a first Counseling Report. The stated reason was failure to meet reasonable standards of efficiency. Plaintiff was told that she did not properly handle communication regarding the account at issue prior to her scheduled time off, even though Thompson knew about her scheduled time off, and her efforts to prepare what was needed in connection with the account and related presentation before her scheduled time off.

f.  Plaintiff's performance did not warrant a Counseling Report.

g.  The first Counseling Report contained false statements and misrepresentations.

h.  In or about July 2020, Defendant reduced Plaintiff's territory by two (2) states but did not change her target/quota to adjust for the territory reduction.

i.  Plaintiff's male and/or heterosexual counterparts were given additional and/or more favorable sales opportunities, being assigned larger geographic territories and lower quotas, rendering their standard for success comparatively lower.

j.  Defendant assigned one (1) of Plaintiff's states to Beth Collins (female, heterosexual), Regional Sales Director, and one (1) of Plaintiff's states to Jennifer Scalesi (female, heterosexual), Regional Sales Director. Plaintiff was more qualified to manage the states than the noncomplaining, heterosexual employees to whom they were assigned.

k.  On May 1, 2021, in a meeting with Gaebel and Thompson, Plaintiff was issued a second Counseling Report. The stated reason was failure to meet reasonable standards of efficiency. Plaintiff was told that she did not properly handle communication regarding certain of her accounts.

l.  Plaintiff's performance did not warrant a second Counseling Report.

m.  The second Counseling Report contained false statements and misrepresentations.

n.  Plaintiff was told that Thompson did not have confidence in her ability to drive an upcoming sales process effectively, even though she had successfully handled such processes numerous times in the past, and that a colleague, Maret Seitz (female, heterosexual), Regional Sales Director, would be assigned to manage the upcoming sales process instead of Plaintiff. Plaintiff was more qualified to manage the sales process than the noncomplaining, heterosexual employee to whom the responsibility was assigned.

43.  Defendant removed accounts from Plaintiff and assigned them to less qualified male and/or heterosexual employees, even though Plaintiff had been working on many of the accounts for months and/or years, because of her sex and sexual orientation.

44.  Plaintiff had heard of multiple other female employees being similarly mistreated and having accounts removed from them and assigned to male employees who received the credit and commissions.

45.  By way of example and without limitation, Plaintiff heard that female employees including Ronnie McClusky (female, heterosexual), Regional Sales Director, Trenna Grice (female, heterosexual), Regional Sales Director, Jessica Rando (female, heterosexual), Regional Sales Director, Nina Cochrane (female, heterosexual), Regional Sales Director, Christina Niles (female, heterosexual), Regional Sales Director, Donna Cooper (female, heterosexual), Regional Sales Director, and Amy Moore (female, heterosexual), Regional Sales Director, Shannon Moody (female, heterosexual), Terri Carpenter (female, unknown), and Esteal Andraus (female,

heterosexual) were all pushed out and/or demoted and/or had accounts removed from them and assigned to male employees and/or complained about the same.

46.    Defendant treated female and/or homosexual employees, including Plaintiff, differently and worse, and in a more hostile and dismissive manner, than male and/or heterosexual employees were treated.

47.    Defendant held female and/or homosexual employees, including Plaintiff, to a more stringent standard than male and/or heterosexual employees were held.

48.    Defendant paid female and/or homosexual employees, including Plaintiff, less than their male counterparts at the same level. By way of example and without limitation:

    a.    Plaintiff knew from discussions with colleagues on her team that her male counterparts performing the same role with similar experience and a similar sales record were making a higher base salary than Plaintiff made, and had been for years.

49.    Plaintiff complained about sex-based salary discrepancies each year. In spite of the same, her salary was never raised to match that of her male counterparts.

50.    On May 27, 2021, in a five (5) page letter, ("the Letter") emailed to Cindy Noble (female, bisexual), Chief Human Resources Officer, copying Kowalewski and Jennifer McConnell (female, heterosexual), Chief Legal Officer, Plaintiff complained of sex and sexual orientation discrimination.

51.    Plaintiff complained of the sexual harassment to which she was subjected, the pattern of "discrimination that [she] face[d] daily as a female sales director," and sexual orientation discrimination she experienced "as a gay female," and provided numerous examples.

52.    Plaintiff engaged in protected activity on May 27, 2021 when she submitted her Letter.

53.    Plaintiff received no written response to her Letter.

54.    On June 2, 2021, in a phone call with Moe Cierci ("Cierci") (male, heterosexual), Human Resources Service Center, he and Plaintiff discussed the Letter.

55.    Plaintiff reiterated to Cierci that she had been subjected to and previously complained of sexual harassment, as referenced in the Letter.

56.    Cierci was dismissive of her complaints.

57.    Cierci asked Plaintiff about the "value" of the accounts where she was not paid commissions.

58.    At the end of the call, Cierci told Plaintiff that he would interview Thompson and Gaebel in connection with his investigation into her complaint letter.

59.    Plaintiff was placed on an administrative leave of absence, effective immediately, while Defendant investigated her complaint.

60.    Plaintiff did not receive an investigative report in connection with Defendant's investigation into her sex and sexual orientation discrimination complaints.

61.    Defendant failed to take any appropriate remedial and/or corrective action regarding Plaintiff's complaint.

62.    Defendant terminated Plaintiff's employment on July 1, 2021, during a phone call with Cierci, effective the next day, July 2, 2021.

63.    Defendant terminated Plaintiff's employment within five (5) weeks of her sex and sexual orientation discrimination complaints.

64.    The stated reason was that management lost their confidence and trust in Plaintiff's ability to get the job done.

65.    Defendant's stated reason is pretext for discrimination and retaliation based on sex and sexual orientation.

66.    Defendant failed to remedy or prevent the sex and sexual orientation discrimination to which Plaintiff was subjected.

67.    Plaintiff was the only employee who was terminated effective July 1, 2021.

68.    Defendant retained all male and/or heterosexual and/or noncomplaining employees when Plaintiff was terminated.

69.    Defendant assigned Plaintiff's job duties and responsibilities to noncomplaining, heterosexual employees.

70.    Plaintiff was more qualified to perform her job duties and responsibilities than the noncomplaining, heterosexual employees to whom her job duties and responsibilities were assigned.

71.    Defendant terminated Plaintiff's employment because of her sex, her sexual orientation, and/or her sex and sexual orientation discrimination complaints.

72.    Defendant subjected Plaintiff to a hostile work environment because of her sex and/or sexual orientation and/or complaints of sex and sexual orientation discrimination.

73.    Defendant did not offer a reason as to why it was subjecting Plaintiff to a hostile work environment.

74.    The sex-based hostile work environment to which Plaintiff was subjected constitutes a continuing violation.

15

75.    Defendant failed to compensate Plaintiff as much as similarly-situated male and/or heterosexual employees were compensated.

76.    Defendant held female and/or homosexual employees to a higher standard than it held male and/or heterosexual employees.

77.    Defendant has an underrepresentation of female employees, especially in high level positions.

78.    Defendant has pushed out and/or terminated and/or undercompensated and/or failed to promote female employees.

79.    Defendant's comments and conduct evidence a bias against female and/or homosexual employees and/or employees who engage in protected activity.

80.    Defendant did not target or treat similarly situated male and/or heterosexual and/or noncomplaining employees in the same manner it treated Plaintiff.

81.    Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory conduct, including without limitation in connection with a hostile work environment, her pay, and her termination.

82.    Plaintiff's complaints of sex discrimination were motivating and/or determinative factors in Defendant's discriminatory and retaliatory conduct, including without limitation in connection with a hostile work environment and her termination.

83.    Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

84.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

85.    The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

86.    As a direct and proximate result of Defendant's discriminatory and retaliatory acts and practices, Plaintiff has suffered and will suffer a loss of earnings, diminution of earning capacity, loss of employee benefits, pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life, the full extent of which is not known at this time.

87.    Defendant's conduct was sufficiently outrageous and egregious enough to warrant an award of punitive damages in favor of Plaintiff.

## COUNT I – TITLE VII

88.    Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

89.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

90.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

17

91.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

92.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violation of Title VII unless this Court grants the relief requested herein.

## COUNT II-PHRA

93.     Plaintiff incorporates by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

94.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

95.     Said violations were intentional and willful.

96.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

97.     Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT III—PFPO

98.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

99.     By committing the foregoing acts of retaliation against Plaintiff, Defendant has violated the PFPO.

100.     Defendant acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

18

101.  As a direct and proximate result of all Defendant's violation of the PFPO, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

102.  Plaintiff is now suffering and will continue to suffer the irreparable injury and monetary damages as a result of all Defendant's discriminatory and retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.  Declaring the acts and practices complained of herein to be in violation of Title VII;

b.  Declaring the acts and practices complained of herein to be in violation of the PHRA;

c.  Declaring the acts and practices complained of herein to be in violation of the PFPO;

d.  Enjoining and permanently restraining the violations alleged herein;

e.  Entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

f.  Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper conduct;

g.  Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendant's improper conduct;

h.  Awarding punitive damages to Plaintiff;

i.  Awarding Plaintiff other such damages as are appropriate under Title VII, the PHRA and the PFPO;

j.  Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

k.  Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW LLC**

Dated: March 8, 2023                    By:    */s/ Katherine C. Oeltjen*
                                                Katherine C. Oeltjen, Esquire (318037)
                                                Evelyn Kallenbach, Esquire (330781)
                                                1525 Locust Street, 9th Floor
                                                Philadelphia, PA 19102
                                                (215) 545-7676
                                                (215) 565-2852 (fax)
                                                *Attorneys for Plaintiff*
                                                *Hayley Schellhaas*

20

# EXHIBIT 1

**Received**

AUG 0 5 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:     :

HAYLEY SCHELLHAAS     :     Docket No.    202100305

    :

V.     :

    :

RESPONDENT:     :

    :

COMPASS GROUP USA, INC.     :

    :

1. The Complainant herein is:

    Name:     Hayley Schellhaas

    Address:     **REDACTED**
              Gilbertsville, PA 19525

2. The Respondent herein is:

    Names:     Compass Group USA, Inc.

    Address:     2400 Yorkmont Road
              Charlotte, NC 28217

3. I, Hayley Schellhaas, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and my sexual orientation (homosexual/lesbian), and

unlawful retaliation because of my complaints of sex and sexual orientation discrimination, as set

forth below.

### Discrimination and Retaliation

A.  I specifically allege:

[1]        On or about June 1, 1999, I began working at a company that was later acquired by Respondent.

[2]        I consistently performed my job duties in a highly competent manner and received positive feedback.

[3]        I worked out of my home office in Pennsylvania.

[4]        I last held the position of Regional Sales Director.

[5]        I last reported to Jennifer Thompson (female, heterosexual[1]), Regional Vice President, Sales.  Thompson reported to Michael Gaebel (male, heterosexual), Senior Vice President, Sales, Corporate Services.  Gaebel reported to Christopher Kowalewski (male, heterosexual), Chief Growth Officer.

[6]        In or about August 2018, I began reporting to Thompson.

[7]        Thompson had no role in my being hired.

[8]        I was the only homosexual employee reporting to Thompson.

[9]        At the time of my termination, in addition to me, the following employees reported to Thompson.  I was more qualified to perform each of these employee's positions.

    (a) George Alahouzous (male, heterosexual), Regional Sales Director;

    (b) Donna Cooper (female, heterosexual), Regional Sales Director;

    (c) Maret Seitz (female, heterosexual), Regional Sales Director;

    (d) Sadie Oliver (female, heterosexual), Regional Sales Director;

    (e) Lauren Francis (female, heterosexual), Vice President;

---

[1] All references herein to an employee's sexual orientation are to the best of my knowledge and belief.

o: 12159652489                  Page: 05 of 15              2021-08-05 10:43:04 EDT              12155652858                From: Nancy Gla...

Case 2:23-cv-00884-TJS     Document 1     Filed 03/08/23     Page 27 of 39

(f)  Tony Kaszuba (male, heterosexual), Restaurant Associates Seller;

(g)  Melissa Jordan (female, heterosexual), Restaurant Associates Seller;

(h)  Laura Smith (female heterosexual), Inside Sales Representative.

[10]     Respondent treated female and/or homosexual employees, including me, differently and worse, and in a more hostile and dismissive manner, than male and/or heterosexual employees were treated.

[11]     Respondent held female and/or homosexual employees, including me, to a more stringent standard than male and/or heterosexual employees were held.

[12]     In or about 2013, at a work event at a hotel, on the night of his retirement party, Kurt Kimball (male, heterosexual), then Chief Growth Officer, engaged in comments and conduct of a sexual nature toward me.  At the hotel bar, Kimball approached me, brought me a drink, and instructed me to go up with him to his hotel suite.  I went with Kimball as instructed, as I felt pressured to comply because he was a superior to me.  Alone in the elevator to his hotel suite, he put his hands on my arms and shoulders, and pulled me in toward him.  After we entered his room, I pull away from him and told him that I needed to leave.  I rushed out of his hotel room, went back down to hotel bar, found several of my colleagues, and began crying, telling them about the comments and conduct of a sexual nature that Kimball had subjected me to.  My colleagues called Gaebel, who came down to speak with me.  I complained to Gaebel of Kimball's comments and conduct of a sexual nature toward me.  Gaebel told me that he would report the same to Human Resources.  After I left his hotel room, Kimball called my cell phone over forty (40) times.

[13]      In 2013, following the above, in a phone call with Adrienne Williams (female, heterosexual), Human Resources, I complained to of Kimball's comments and conduct of a sexual nature toward me.

[14]      Respondent took no action to remedy or prevent the sex discrimination, including sexual harassment, to which I was subjected.

[15]      Respondent failed to investigate my sex discrimination complaints.

[16]      I heard that other female employees had complained of sexual harassment by Kimball.

[17]      I heard that Kimball "retired" because of female employees' sexual harassment complaints.

[18]      I heard that multiple female employees have complained of sexual harassment by male executive employees, including Tom Ondroff (male, heterosexual), Chief Financial Officer and Chief Growth Officer.

[19]      I heard that multiple female employees had accounts removed from them and assigned to male employees who received the credit and commissions.

[20]      I heard that multiple female employees left Respondent because of how they were treated.

[21]      I heard that multiple female employees, including Ronnie McClusky (female, heterosexual), Regional Sales Director, Trenna Grice (female, heterosexual), Regional Sales Director, Jessica Rando (female, heterosexual), Regional Sales Director, Nina Cochrane (female, heterosexual), Regional Sales Director, Christina Niles (female, heterosexual), Regional Sales Director, Donna Cooper (female, heterosexual), Regional Sales Director, and Amy Moore

(female, heterosexual), Regional Sales Director, were pushed out and/or demoted and/or had accounts removed from them and assigned to male employees.

[22]     Following my sex discrimination complaints, I was treated in a hostile and dismissive manner—differently and worse than how male and/or heterosexual and/or noncomplaining employees were treated, and differently and worse than how I was treated before I complained of sex discrimination.

[23]     My performance was unjustly criticized, I was belittled, and I was spoken to in a demeaning, condescending manner.

[24]     When I secured an account, Respondent gave the credit and commission to a male Sales Director employee, including Tom Hennessey (male, heterosexual), Sales Director, instead of me.

[25]     After I built a relationship with a potential client, Respondent assigned the opportunity to Nicholas Gillett (male, heterosexual), Sales Director, and Robert Nicklin, Senior Vice President (male, heterosexual), who were compensated and credited for the sale, instead of me.

[26]     An account that was connected to an account that I had been working on was, without explanation, removed from me and assigned to David Rodenheiser (male, heterosexual), Sales Director, for which he took the credit and compensation instead of me.

[27]     In or about 2014, I came out at work as lesbian to several coworkers.

[28]     In or about the fall of 2015, I started bringing my girlfriend to work functions and with me on sales trips, when permitted to bring a partner.

[29]      In or about the fall of 2015, at a work event, an employee lifted two (2) fingers up to his mouth and stuck his tongue through his fingers, licking around his fingers, while staring at me, which I understood to be a sexual gesture because of my sexual orientation.

[30]      In or about November 2019, at a work event, Thompson commented that I cleaned up really well for a "dyke."

[31]      In or about 2019, I heard that, at a work event, in front of other employees, _____ (male, heterosexual), Sales Director, commented that he was going to "fuck" Anita Cox (female, homosexual), Regional Sales Director.  The male employee remains employed with Respondent.

[32]      After coming out as lesbian, I was treated differently and worse, and in a more hostile and dismissive manner, than male and/or heterosexual employees were treated.

[33]      Respondent removed accounts from me and assigned them to less qualified male and/or heterosexual employees, even though I had been working on many of the accounts for months and/or years.

[34]      Respondent failed to lower my quota after removing accounts from me, while male and/or heterosexual employees with smaller territories had lower quotas.

[35]      Respondent failed to compensate me as much as similarly-situated male and/or heterosexual employees were compensated.

[36]      On April 14, 2020, Respondent removed an account from me and assigned it to Alahouzous (male, heterosexual), who received the credit and commissions for the account instead of me.  I was more qualified to manage the account than the male, heterosexual, noncomplaining employee to whom it was assigned.

[37]    On April 15, 2020, a meeting with Kowalewski, I asked why an account was taken away from me and assigned to Alahouzous. He dismissed my questions and stated that he did not understand why we were having this conversation.

[38]    On April 15, 2020, in an email to Gaebel, I asked why an account was taken away from me and assigned to Alahouzous.

[39]    On April 15, 2020, in an email to Jennifer Hayes (female, heterosexual), Human Resources, I stated that I was concerned that an account was taken away from me and assigned to another employee, Alahouzous.

[40]    I received no response to my above email.

[41]    On April 16, 2020, in an email from Gaebel, he stated that he would schedule a meeting for next week to discuss my concerns.

[42]    On April 20, 2020, in a meeting with Gaebel and Thompson, I was issued a first Counseling Report. The stated reason was failure to meet reasonable standards of efficiency. I was told that I did not properly handle communication regarding the account at issue prior to my scheduled time off, even though Thompson knew about my scheduled time off and my efforts to prepare what was needed in connection with the account and related presentation before my scheduled time off. My performance did not warrant a Counseling Report. The Counseling Report contained false statements and misrepresentations.

[43]    In or about July 2020, Respondent reduced my territory by two (2) states but did not change my target/quota to adjust for the territory reduction.

[44]    Respondent assigned one (1) of my states to Beth Collins (female, heterosexual), Regional Sales Director, and one (1) of my states to Jennifer Scalesi (female,

heterosexual), Regional Sales Director. I was more qualified to manage the states than the noncomplaining, heterosexual employees to whom they were assigned.

[45]     In or about October 2021, Respondent transferred Seitz (female, heterosexual) to my team, reporting to Thompson.

[46]     In or about April 2021, Respondent transferred Oliver (female, heterosexual) to my team, reporting to Thompson.

[47]     In or about April 2021, Respondent transferred Francis (female, heterosexual) to my team, reporting to Thompson.

[48]     On May 1, 2021, in a meeting with Gaebel and Thompson, I was issued a second Counseling Report. The stated reason was failure to meet reasonable standards of efficiency. I was told that I did not properly handle communication regarding certain of my accounts. My performance did not warrant a Counseling Report. The Counseling Report contained false statements and misrepresentations. I was told that Thompson did not have confidence in my ability to drive an upcoming sales process effectively, even though I had handled such processes numerous times in the past, and Seitz would be assigned to manage the upcoming sales process instead of me. I was more qualified to manage the sales process than the noncomplaining, heterosexual employee to whom the responsibility was assigned.

[49]     On May 27, 2021, in a five (5) page letter emailed to Cindy Noble (female, bisexual), Chief Human Resources Officer, copying Kowalewski and Jennifer McConnell (female, heterosexual), Chief Legal Officer, I complained of sex and sexual orientation discrimination. I complained of the sexual harassment to which I was subjected, the pattern of "discrimination that I face[d] daily as a female sales director," and sexual orientation discrimination "as a gay female," and provided numerous examples.

[50]      I received no written response to my letter.

[51]      On June 2, 2021, in a phone call with Moe Cierci (male, heterosexual), Human Resources Service Center, we discussed my above complaint letter. Cierci asked me about the "value" of the accounts where I was not paid commissions. I complained that I had been subjected to and previously complained of sexual harassment, as referenced in my letter, but Cierci was dismissive of my complaints. Cierci told me that he was going to interview Thompson and Gaebel in connection with his investigation into my complaint letter. I was placed on an administrative leave of absence, effective immediately, while Respondent investigated my complaint.

[52]      On July 1, 2021, in a phone call with Cierci, Respondent terminated my employment, effective July 2, 2021. The stated reason was that management lost their confidence and trust in my ability to get the job done.

[53]      Respondent terminated my employment because of my sex, my sexual orientation, and/or my sex and sexual orientation discrimination complaints.

[54]      After I engaged in protected activity, I was placed on an administrative leave, and Respondent terminated my employment within five (5) weeks of my sex and sexual orientation discrimination complaints.

[55]      I received no third and Final Progressive Counseling Report, which was the next step in Respondent's progressive discipline policy.

[56]      Respondent failed to follow its progressive discipline policy in terminating my employment.

[57]     Despite Respondent's stated reason for terminating my employment, Respondent offered me a severance payment of $93,320.51 in exchange for a release of all claims against Respondent and confidentiality. I refused to sign the severance agreement.

[58]     I received no investigative report in connection with Respondent's investigation into my sex and sexual orientation discrimination complaints.

[59]     I was the only employee reporting to Thompson who was terminated effective July 1, 2021.

[60]     Respondent retained all male and/or heterosexual and/or noncomplaining employees when I was terminated.

[61]     Respondent assigned my job duties and responsibilities to noncomplaining, heterosexual employees, including Francis and Cooper. I was more qualified to perform my job duties and responsibilities than the noncomplaining, heterosexual employees, including Francis and Cooper, to whom my job duties and responsibilities were assigned.

[62]     Respondent failed to remedy or prevent the sex and sexual orientation discrimination to which I was subjected.

[63]     Respondent subjected me to a hostile work environment because of my sex and/or sexual orientation and/or complaints of sex and sexual orientation discrimination.

[64]     The sex-based hostile work environment to which I was subjected constitutes a continuing violation.

[65]     Respondent failed to compensate me as much as male and/or heterosexual employees were compensated.

[66]     Respondent's comments and conduct evidence a bias against female and/or homosexual employees and/or employees who engage in protected activity.

[67]     Respondent's sex and sexual orientation discriminatory and retaliatory comments and conduct toward me has caused me emotional distress.

[68]     Respondent held female and/or homosexual employees to a higher standard than it held male and/or heterosexual employees.

[69]     Respondent has an underrepresentation of female employees, especially in high level positions.

[70]     Respondent has pushed out and/or terminated and/or compensated less and/or failed to promote female employees.

[71]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are female, and have been discriminated against based on sex and/or sexual orientation, in connection with the terms and conditions of their employment, including being subjected to a hostile work environment, sexual harassment, and/or hiring.**

B.   Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female) and my sexual orientation (homosexual/lesbian), and retaliated against because of my complaints of sex and sexual orientation discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

     _X_          **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d)**

     _____          Section 5.1 Subsection(s) _____

Section 5.2 Subsection(s) _____

Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

   X       **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.     The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

8/3/2021
_____
(Date Signed)

*Hayley C. Schellhaas*
_____
(Signature)    Hayley Schellhaas
REDACTED
Gilbertsville, PA 19525

# EXHIBIT 2

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Hayley Schellhaas**
**REDACTED**
**Gilbertsville, PA 19525**

From:  **Philadelphia District Office**
**801 Market St, Suite 1000**
**Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-61517** | **Damon Johnson,** <br> **State, Local & Tribal Program Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> More than 180 days have passed since the filing of this charge.

> The EEOC is terminating its processing of this charge.

Please retain this notice for your records.

On behalf of the Commission

Digitally Signed By: Karen McDonough
12/14/2022

Enclosures(s)

**Karen McDonough**
**Deputy District Director**

cc:  **For Charging Party**
**Kayleen Egan**
**Littler Mendelson, P.C.**
**Three Parkway**
**1601 Cherry Street, Suite 1400**
**Philadelphia, PA 19102**

**For Charging Party**
**Katherine C. Oeltjen**
**Console Mattiacci Law, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**